The REGENTS Of the University OF
CALIFORNIA, et al., Plaintiffs,

v.

SYNBIOTICS CORPORATION,
Defendant.

Civ. No. 93–822GT.

United States District Court,
S.D. California.

Heard Dec. 20, 1993.

Decided Jan. 11, 1994.

leukemia) and that this virus was similar to the virus that causes AIDS in humans.

UC/IDEXX now move for partial summary judgment asserting that Brown is not a co-discoverer FIV virus or co-inventor of the '602 patent. UC/IDEXX assert that two other rulings follow from a ruling that Brown is not a co-inventor. First, if Brown is not a co-inventor, Brown cannot confer any rights to the '602 patent by "license" to Synbiotics and her purported "license" of the '602 patent to Synbiotics is a nullity. Second, since Brown is not a co-inventor, summary judgment should be granted on Synbiotics' defense of patent unenforceability that is based on incorrect inventorship.

## ORDER

GORDON THOMPSON, Jr., District Judge.

On December 20, 1993 Defendant's Synbiotics Corporation ("Synbiotics") Motion for Leave to Amend its First Amended Answer (or File a Second Amended Answer) to add the affirmative defense of license came on for hearing before the Court. Additionally, Plaintiffs, the Regents of the University of California and IDEXX Laboratories, Inc. ("UC/IDEXX") Motion for Partial Summary Judgment came on for hearing before the Court. The Court has fully considered this matter, including review of the moving papers, the opposition, the reply, the authorities cited therein, and the arguments presented.

## BACKGROUND

Synbiotics claimed in its opposition to UC/IDEXX's Motion for Preliminary Injunction that Marlo Brown ("Brown") was a co-discoverer of the FIV virus and therefore a co-inventor for the methods for diagnosing FIV infection. According to Synbiotics, this makes Brown a co-inventor of the 5,037,753 and the 5,118,602 patents [1] because she contributed the idea that her cats, that she brought to Dr. Pedersen at UC Davis, were infected with a virus other than FeLV (feline

## CONCLUSIONS OF LAW

### A. Summary Judgment Standard

A moving party is entitled to summary judgment whenever the court is satisfied that there exists "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

A moving plaintiff must do two things in order to meet its burden at the summary judgment stage. First, it must adduce "admissible evidence on all matters as to which [*it*] bears the burden of proof." Tashima, *Federal Civil Practice Before Trial* (1991). Having thereby established its prima facie case, it then need only allege that the defendant against whom the motion is directed will be unable to prove one or more elements of its defense at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–327, 106 S.Ct. 2548, 2552–2555, 91 L.Ed.2d 265 (1986).

In order to rebut this showing, the non-movant must adduce affidavits, depositions, answers to interrogatories, or admissions sufficient to place the challenged element(s) genuinely in dispute. *See id.* In considering the merits of the motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Accordingly, the non-

1. The '753 patent is the patent on the discovery of the actual FIV virus itself. The '602 patent, which is at issue in this case, covers the diagnostic methods and tests for the FIV virus.

movant must provide the court with evidence which, when interpreted in the light most favorable to the non-movant, is sufficient to place each of the allegedly insufficient elements genuinely in dispute.

## B. Marlo Brown is not a Co–Inventor of the '602 Patent

■ Conception of an invention is the threshold issue in determining who are the inventors of a patent. Unless a person contributes to the conception of the invention, he is not an inventor. *In re Hardee*, 223 U.S.P.Q. 1122, 1123 (Comm'r Pat & Trademarks 1984) (citing *Mueller Brass Co. v. Reading Indus.*, 352 F.Supp. 1357 (E.D.Pa. 1972), *aff'd* 487 F.2d 1395 (3d Cir.1973)).

■ Conception is defined as the "formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed.Cir.1986) (citing 1 *Robinson on Patents* 532 (1890)). Actual reduction to practice requires that the claimed invention work for its intended purposes. *Id.* Accordingly, conception requires both the idea of the invention's structure and possession of an operative method of making it. *Amgen, Inc. v. Chugai Pharmaceutical Co., Ltd.*, 927 F.2d 1200 1206 (Fed.Cir.1991).

In some instances, such as the discovery of genes or chemicals, an inventor is unable to establish a conception until he has reduced the invention to practice through a successful experiment. *Id.* This situation results in what is termed "simultaneous conception and reduction to practice." *Id.* In *Amgen*, the Court held that, with respect to the discovery of a gene which is considered a chemical compound, conception has not been achieved until reduction to practice has occurred, or until after the gene is isolated. *Id.*

■ UC/IDEXX urges, and this Court accepts, that the discovery of the FIV virus of the '753 and '602 patent is similar to the discovery of a gene or chemical compound. It is undisputed that the FIV virus is a biochemical substance, or in patent parlance a "biologically active composition of matter."

Accordingly, the Court holds that conception, in this case, did not occur until the virus was isolated, or the concept was reduced to practice.

Since the doctrine of "simultaneous conception and reduction to practice" applies, conception of the inventions claimed in the '602 and '753 patents did not occur until after the FIV was actually isolated and its definitive structure, name, chemical and physical properties were determined. As a matter of law, only those persons who contributed to the acts and events that resulted in the conception and reduction to practice are properly considered the inventors of the '753 and '602 patent. *See Fiers v. Revel*, 984 F.2d 1164 (Fed.Cir.1993); *Amgen Inc. v. Chugai Pharmaceutical Co.*, 927 F.2d 1200 (Fed.Cir.1991).

Brown was not present and did not participate in any way in the events of the "simultaneous conception and reduction to practice" of the FIV virus. FIV is an AIDS-like virus in cats that produces many AIDS-like symptoms in the infected cats. Brown observed that several of her cats had these symptoms. Brown had the cats tested for other feline diseases, all which turned out negative. Eventually, Brown took her sick cats to UC Davis and told the staff she thought the cats may be infected with a virus similar to the human AIDS virus. The staff at UC Davis took samples from Brown's cats and visited Brown once. Brown admits in her deposition that she made no contribution to the isolation of the virus or to the determination of its structure, name, or chemical or physical properties. In essence, Brown's sole contribution to the discovery of FIV is that she brought her sick cats, along with her written observations of the cats' symptoms, to UC Davis with a suspicion that the cats may have a virus similar to the human AIDS virus. These facts do not support a claim that Brown is a co-inventor for the '753 or '602 patent. Accordingly, UC/IDEXX's motion for partial summary judgment on the issue of whether Brown is a co-inventor is granted.

## C. Synbiotics' Defense of License

Synbiotics, in its proposed second amended answer, raises the defense of license. Synbi-

otics claims that Brown is a joint inventor of the '602 patent and that Brown granted Synbiotics a license to the '602 patent. According to Synbiotics, it did not infringe on the '602 patent because it has a license from Brown.

The Court, in the ruling above, holds that Brown is not a joint inventor of the '602 patent. Since she is not an inventor of the '602 patent, she can not grant Synbiotics a license for the '602 patent. In effect, the license she granted Synbiotics is a nullity. Accordingly, Synbiotics can not claim it did not infringe on the '602 patent because it was granted a license. Therefore, UC/IDEXX's Motion for Partial Summary Judgment on the issue of Synbiotics' defense of license is granted.

### D. Synbiotics' Defense of Unenforceability

Synbiotics also raises the defense that the '602 patent is unenforceable. Synbiotics claims that UC withheld material information from the Patent and Trademark Office ("PTO") and this renders the patent unenforceable. Synbiotics alleges that UC withheld material information concerning Brown's inventorship contribution from the PTO with deceptive intent. Synbiotics also alleges that UC intentionally withheld material prior art references from the PTO.

UC/IDEXX separate Synbiotics' unenforceability defense into two claims, one claim based on the alleged withholding of Brown's inventorship contribution from the PTO, the other claim based on the alleged withholding material prior art from the PTO. UC/IDEXX move this Court to grant partial summary judgment on the defense of unenforceability based on Brown's inventorship contribution. The Court deems it is inefficient to split the defense of unenforceability into two different claims. Accordingly, the Court denies UC/IDEXX's Motion for Partial Summary Judgment on Synbiotics' defense that the '602 patent is unenforceable.

**IT IS ORDERED** that:

1. Synbiotics' Motion for Leave to Amend its First Amended Answer to add the affirmative defense of license **GRANTED.** UC/IDEXX filed a Notice of Non–Opposition.

2. UC/IDEXX's Motion for Partial Summary Judgment on the issue of whether Marlo Brown is a joint inventor of the '602 patent is **GRANTED.** The Court holds that doctrine of "simultaneous conception and reduction to practice" applies to the inventions claimed in the '602 patent. Ms. Brown has admitted that she made no contribution to the isolation of the virus, or to the determination of its structure, name, or chemical or physical properties. Accordingly, she is not a joint inventor of the '602 patent.

3. UC/IDEXX's Motion for Partial Summary Judgment on Synbiotics' license defense is **GRANTED.** Since Ms. Brown is not a joint inventor of the '602, she had no "license" to grant to Synbiotics. Accordingly, the license is a nullity and Synbiotics can not raise the defense that it did not infringe on the '602 patent because Ms. Brown granted it a license.

4. UC/IDEXX's Motion for Partial Summary Judgment on Synbiotics' defense of unenforceability is **DENIED.** There is more at issue in this defense than Ms. Brown's inventorship contribution. For instance, Synbiotics alleges that UC intentionally withheld material prior art references from the Patent and Trademark Office.

**IT IS SO ORDERED.**