UTTER, Appellant,

v.

**HIRAGA et al., Appellees.**

No. 87-1531.

United States Court of Appeals, Federal Circuit.

April 28, 1988.

William M. Wesley, Neuman, Williams, Anderson & Olson, Chicago, Ill., argued for appellant. With him on the brief were Theodore W. Anderson, John J. Cavanaugh and Robert W. Fieseler.

Scott F. Partridge, Banner, Birch, McKie & Beckett, Washington, D.C., argued for appellees. With him on the brief were James A. Niegowski and Joseph M. Skerpon.

Before MARKEY, Chief Judge, NICHOLS, Senior Circuit Judge, and NIES, Circuit Judge.

MARKEY, Chief Judge.

Utter appeals from a decision of the United States Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (board), awarding priority of invention to Hiraga et al., the senior party, in Interference No. 101,068 ('068 interference). Hiraga moved to dismiss the appeal, saying an agreement between the parties precluded Utter from appealing the board's decision. We deny Hiraga's motion to dismiss and affirm the board's decision.

## BACKGROUND

### I. *The Technology*

The contested invention involves scroll compressors. Scroll compressors, which are used in air conditioners, have two spirals interfitted with each other. One spiral is fixed, while the other orbits its center, compressing pockets of fluid by pushing them inward around the ever-narrower space between the spirals. In a "radially compliant" scroll compressor, the outer surface of the orbiting spiral meets the inner surface of the fixed spiral as it pushes the fluid pockets around.

In the late 1970's and early 1980's, Masaharu Hiraga and Kiyoshi Terauchi in Japan, Robert E. Utter in Wisconsin, and John E. McCullough et al. in Massachusetts, were working to solve two problems in radially compliant scroll compressor technology: (1) maintaining a constant force where the spiral surfaces meet, to seal the fluid pockets with minimal surface wear, and (2) eliminating vibration caused by centrifugal force on the orbiting spiral. Hiraga, Utter, and McCullough each found that a force constant at all operating speeds could be generated by connecting the orbiting spiral to its drive shaft in a particular geometric relationship, while offsetting centrifugal force with a counterweight.

### II. *Patent Applications Filed*

On March 18, 1980, Hiraga filed a patent application in Japan, Serial No. 34,559/1980. On October 8, 1980, Utter filed in the PTO a patent application entitled "Scroll–Type Fluid Displacement Apparatus With Radially Compliant Driving Means," Serial No. 195,289. On March 18, 1981, claiming the benefit of his earlier Japanese application, Hiraga filed a United States patent application, Serial No. 244,961, entitled "Scroll–Type Fluid Displacement Apparatus With Balanced Drive Means." On April 3, 1981, McCullough filed patent application Serial No. 250,730, entitled "Compact Scroll–Type Fluid Compressor With Swing–Link Driving Means."

Utter's application disclosed two preferred embodiments, an "internal pivot" and an "external pivot" configuration. Hiraga disclosed the internal pivot as the preferred embodiment, and did not specifically disclose the external pivot. McCul-

lough's application disclosed only the external pivot species.

### III. *Interferences Declared*

On March 10, 1983, the examiner suggested that Hiraga add two claims for the purpose of interference. 37 C.F.R. § 1.203(b) (1982). On July 8, 1983, the PTO declared three interferences. The '068 interference involved Hiraga, Utter and McCullough, and consisted of one generic count taken from claim 17 of Utter's application. Interference 101,069 ('069 interference), between Utter and McCullough, consisted of one count to the external pivot species within the scope of the generic '068 count. Interference 101,071 ('071 interference), between Hiraga and Utter, consisted of one count to the internal pivot species within the scope of the '068 count.

### IV. *1984 Agreement*

On April 3, 1984, the parties to the interferences entered into an "AGREEMENT" (1984 agreement) providing, in part:

WHEREAS, to avoid the delay and expense associated with formal interference proceedings in the [PTO] and in the Courts of the United States ..., the parties hereto, agree as follows:

\*    \*    \*    \*    \*    \*

2. PROCEDURE

(a) [T]he attorneys for the parties to the respective interferences shall jointly make a conscientious effort to reach agreement as to the proper determination regarding priority and all other issues in said interferences....

(b) If the attorneys for the parties in any interference are unable to agree as to the proper determination of any issue or issues in such interference as contemplated in Paragraph 2(a) hereof, ... such disputed issue or issues shall be referred to and decided by a panel ( ...) of one or more neutral experts in the field of patent law, the decision of whom will be binding upon the parties with no further right of appeal.

The parties were unable to resolve among themselves the issues in the interferences. Accordingly, in June 1984, pursuant to ¶ 2(b) of the 1984 agreement, they selected an arbitrator to decide disputed issues. They executed an addendum to the 1984 agreement, which provided that the arbitrator "shall act as the expert for deciding issues in the interferences constituting the subject matter of said agreement unless the parties mutually agree otherwise in writing."

### V. *Preliminary Motion*

On July 23, 1984, Utter filed in the PTO a preliminary motion under 37 C.F.R. § 1.231(a)(1) (1984) to dissolve the '068 interference as to Hiraga (Motion I). Utter argued that Hiraga's application was specifically limited to the internal pivot construction, and so did not support the broad interference count, and that Hiraga had disclaimed the external pivot construction. On November 21, 1984, the Interference Examiner transmitted the motion to the Primary Examiner. The Primary Examiner denied it on March 11, 1985, saying Hiraga's disclosure of the internal pivot species supported the broad count, and that the evidence did not show Hiraga had disclaimed anything. On May 28, 1985, the Commissioner denied Utter's petition for review. *See* 37 C.F.R. § 1.244 (1984).

### VI. *The Arbitrator's Decision*

In an October 23, 1985, decision, the arbitrator resolved some, but not all, of the issues in the interferences. Conditioned on the outcome of further proceedings, the arbitrator found that Hiraga was entitled to priority in the '068 and '071 interferences based on his Japanese filing date, and Utter was entitled to priority in the '069 interference. The arbitrator declined to decide some issues, including those raised in Utter's Motion I, saying:

It is the position of the arbitrator, agreed to by the parties, that certain matters (sometimes referred to as matters of patentability), are peculiarly within the province of the Patent Office for decision; and it is believed that in the present interferences, these matters are those which were transmitted to and upon which the Primary Examiner made

his motion decisions. Accordingly, as to these matters, the arbitrator expresses no opinion, and they are being submitted to the Board at final hearing, to the extent that these matters are reraised by the parties.

The arbitrator concluded:

It is respectfully submitted by the arbitrator that the findings hereinafter set forth, together with such decision by the Board as may be made upon the matter of the Motions, will enable the Board to make the appropriate awards of priority in these interferences.

Each party stipulated that the arbitrator's findings were "binding and conclusive respecting the issue of priority rights," but "reserve[d] all rights" to submit arguments to the board "respecting all issues in these proceedings that are not resolved by the stipulated findings of [the arbitrator]."

### VII. *The Board's Decision*

The parties presented to the board the interference issues not resolved by the arbitrator. Utter argued, as he had in his Motion I, that Hiraga's application did not support the full scope of the '068 interference generic count, and that Hiraga had disclaimed the external pivot species within that count.

In a June 9, 1987 final decision, the board rejected Utter's arguments. The board said it had found no disclaimers in the record that "preclude[d Hiraga et al.] from being awarded priority as to the generic subject matter if they are found to be otherwise entitled thereto." The board said Hiraga did not have to limit his claims to the internal pivot configuration, in view of Hiraga's broadly stated "objects of the invention" and this statement in the specification:

This invention has been described in detail in connection with the preferred embodiments, but these are examples only and this invention is not restricted thereto. It will be easily understood by those skilled in the art that the other variations and modifications can be easily made within the scope of this invention.

The board said the prior art patents Hiraga cited, which disclosed external pivots, plus Hiraga's disclosure of the proper geometry and counterweight in his description of the internal pivot embodiment, "would have enabled one skilled in the art to incorporate this teaching into the [external pivot] embodiment." The board concluded:

The citation of the McCullough and other patents which employed the swing-link external pivot connection between the drive shaft and the scroll, the broadly recited objects and the specific description of the boss-bushing internal pivot are more than enough to support the generic claim here presented by Hiraga et al, which is merely silent as to the location of the pivot with respect to periphery of the boss. We hold that Hiraga et al have an enabling disclosure and written description of their claim which corresponds exactly to the '068 count.

The board further held that, because Hiraga's Japanese application disclosed an embodiment of the generic '068 count, he was entitled to the benefit of the Japanese filing date. Accordingly, the board awarded priority to Hiraga in the '068 interference. Resolving other disputed issues as well, the board awarded priority to Utter in the '069 interference, and to Hiraga in the '071 interference.

Utter appeals the board's decision in the '068 interference.

### ISSUES

(1) Whether the 1984 agreement precludes Utter from appealing the board's decision.

(2) Whether the board committed reversible error in awarding priority to Hiraga in the '068 interference.

### OPINION

### I. *Motion To Dismiss*

■ Hiraga moved to dismiss Utter's appeal, arguing that the 1984 agreement precludes Utter from appealing the board's

decision.[1] We conclude that the 1984 agreement and subsequent agreements cannot be so construed.

As Hiraga notes, the purpose of the 1984 agreement was "to avoid the delay and expense associated with formal interference proceedings in the [PTO] and in the Courts of the United States." Hiraga stresses that, in ¶ 2(a), the parties promised to endeavor to reach agreement on priority and *all* other interference issues. Under ¶ 2(b), "any issue" not resolved under ¶ 2(a) would be referred to an arbitrator, whose decision "will be binding upon the parties with no further right of appeal." The addendum to the 1984 agreement said the arbitrator would decide disputed issues "unless the parties mutually agree otherwise in writing." Hiraga says the parties never so agreed; thus, says Hiraga, the 1984 agreement precludes Utter from pursuing this appeal.

The record shows, however, that the parties did agree, "in writing," to alter the procedure contemplated in the 1984 agreement and addendum. Following the arbitrator's decision, each party filed in the PTO a written stipulation accepting the arbitrator's "Background Statement," which included his decision to refer certain issues to the board and "enable the Board to make the appropriate awards of priority."

Although ¶ 2(b) of the 1984 agreement allows "no further right of appeal" from the arbitrator's decision, this is not an appeal from the arbitrator's decision; it is an appeal from the board's decision. The arbitrator did not decide all issues in the interferences, as the parties thought he would when they drafted the 1984 agreement. The board ultimately awarded priority. We find nothing in any agreement showing that the parties had a clear intent to waive their right to appeal from the decision ulti-

mately rendered by the board. *Cf. Goodsell v. Shea,* 651 F.2d 765, 766, 767, 210 USPQ 612, 613, 614 (CCPA 1981) (agreement that the "decision of the Board of Patent Interferences ... shall be accepted as final and conclusive upon the parties and each party hereby waives any and all rights of appeal from any such decision" expressed a "clear intent" not to appeal from the board's decision). We conclude, therefore, that neither the 1984 agreement nor any other agreement precludes Utter from filing the present appeal.

## II. *Priority Award*

### A. *35 U.S.C. § 112*

Hiraga obtained the benefit of his Japanese filing date under 35 U.S.C. § 119, and priority in the '068 interference, because the board concluded that his Japanese application complied with the enablement and written description requirements of 35 U.S.C. § 112 ¶ 1[2] as to the subject matter of the '068 interference count. *See Cross v. Iizuka,* 753 F.2d 1040, 1043 n. 5, 224 USPQ 739, 741 n. 5 (Fed.Cir.1985); *Kawai v. Metlesics,* 480 F.2d 880, 881, 178 USPQ 158, 159 (CCPA 1973). Utter argues that the board erred in "ignoring" Hiraga's burden to prove that his disclosure met those requirements, and in holding that Hiraga's Japanese and United States applications did meet them.

### 1. Burden of Proof

Utter says the examiner, in suggesting that Hiraga add to his application the broad claim corresponding to the '068 interference count, "erroneously relieved Hiraga of the burden of showing his right to make that broad claim." Utter says the board compounded that error by not mentioning any burden of proof in its opinion.

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same....

---

**1.** Hiraga also says the agreement deprives this court of jurisdiction. Parties, by agreement or otherwise, are incapable of either adding to or detracting from a court's jurisdiction. *See Ballard Medical Prods. v. Wright,* 823 F.2d 527, 530 & n. 2, 3 USPQ2d 1337, 1339 & n. 2 (Fed.Cir. 1987).

**2.** 35 U.S.C. § 112 ¶ 1 provides, in part:

■ We agree that Hiraga had the burden to show support for the '068 interference count. A party who, like Hiraga, relies on an earlier-filed application under 35 U.S.C. §§ 119 or 120 has the burden to show that the foreign or parent application supports later-added claims under 35 U.S.C. § 112 ¶ 1, regardless of whether that party is the junior or senior party in an interference. *Ralston Purina Co. v. Far–Mar–Co, Inc.*, 772 F.2d 1570, 1574 n. 2, 227 USPQ 177, 178 n. 2 (Fed.Cir.1985); *Wagoner v. Barger*, 463 F.2d 1377, 1380, 175 USPQ 85, 87 (CCPA 1972). Because the board's findings and conclusions are supportable under that standard, however, the board's failure to discuss burdens of proof is not material. *Cf.* 28 U.S.C. § 2111 (courts of appeal shall disregard harmless errors).

2. Enablement

■ We review the enablement aspect of 35 U.S.C. § 112 ¶ 1 as a question of law. *Atlas Powder Co. v. E.I. Du Pont De Nemours & Co.*, 750 F.2d 1569, 1576, 224 USPQ 409, 413 (Fed.Cir.1984). Utter says the board's holding of enablement is wrong because it was based on only part of Hiraga's specification and purportedly ignored Hiraga's "criticism" of prior art external pivot structures. Utter says that criticism "would have directed persons skilled in the art away from incorporating the appropriate linkage geometry and counterweight into any of the prior art structures."

■ Hiraga's Japanese specification does not specifically "criticize" external pivot structures. It lists prior art patents, which happen to be directed to external pivot structures, and merely states that certain problems "have not been sufficiently resolved by the above-listed U.S. patents." We discern nothing in Hiraga's Japanese specification that would discourage those skilled in the art from applying its teaching to an external pivot structure.

Utter argues that scroll compressors are unpredictable because the evidence showed failures of McCullough's prototype external pivot compressors. Therefore, says Utter, Hiraga's applications cannot support the generic '068 count, which encompasses the external pivot species. That some experimentation is necessary does not preclude enablement, however, unless the amount of experimentation is unduly extensive. *Atlas Powder*, 750 F.2d at 1576, 224 USPQ at 413. The board found Hiraga's disclosure enabling. Utter points to nothing in the record which persuades us that the board's conclusion was legally in error.

3. Written Description

■ Although the question of whether Hiraga's Japanese specification contains a sufficient disclosure under 35 U.S.C. § 112 ¶ 1 is one of law, *Kennecott Corp. v. Kyocera International Inc.*, 835 F.2d 1419, 1420, 5 USPQ2d 1194, 1195 (Fed.Cir.1987), *petition for cert. filed*, 56 U.S.L.W. 3684 (U.S. Mar. 21, 1988) (No. 87–1592), compliance with the written description aspect of that requirement is a question of fact. *Ralston Purina Co.*, 772 F.2d at 1575, 227 USPQ at 179. We review the board's findings of fact under the clearly erroneous standard. *Coleman v. Dines*, 754 F.2d 353, 356, 224 USPQ 857, 859 (Fed.Cir.1985).

Utter makes much of Hiraga's acknowledgement that he has never claimed the external pivot species and did not participate in the '069 interference involving that species. The subject matter of the three interferences being patentably distinct, Utter says Hiraga was not entitled to make the generic '068 count because he disclosed only one of the '069 and '071 species it encompassed. There is no inconsistency in awarding a generic count to one inventor, while awarding a patentably distinct species count to another, however. *See Hester v. Allgeier*, 687 F.2d 464, 215 USPQ 481 (CCPA 1982). The subject matter of the '068 interference was a generic count, not the internal and external pivot species. A specification may, within the meaning of 35 U.S.C. § 112 ¶ 1, contain a written description of a broadly claimed invention without describing all species that claim encompasses. *Ralston Purina Co.*, 772 F.2d at 1575, 227 USPQ at 179; *In re Rasmussen*, 650 F.2d 1212, 1215, 211 USPQ 323, 326 (CCPA 1981).

Hiraga's Japanese specification complies with the written description requirement of Section 112 if "the disclosure of the application as originally filed reasonably conveys to the artisan that [Hiraga] had possession at that time of the later claimed ['068 interference count] subject matter." *In re Kaslow*, 707 F.2d 1366, 1375, 217 USPQ 1089, 1096 (Fed.Cir.1983); *see Kennecott*, 835 F.2d at 1421, 5 USPQ2d at 1197.

Hiraga's Japanese application describes in detail the geometry and components that make its internal pivot embodiment work to seal fluid pockets in the scroll compressor with minimal wear of parts, while eliminating vibration. The '068 interference count recites those factors, and, as the board stated, "is merely silent as to the location of the pivot." Utter's arguments do not convince this court that the board clearly erred in rejecting Utter's challenge to Hiraga's Japanese application under the written description requirement of Section 112.

### B. *Disclaimer*

Finally, Utter has failed to show that the board's finding that Hiraga made no admissions or disclaimers precluding an award of priority to the generic subject matter is clearly erroneous.

### CONCLUSION

Because the record does not show that the parties had a clear intent to waive their right to appeal to this court, we deny Hiraga's motion to dismiss. Because the board committed no reversible error in concluding that Hiraga's Japanese application met the requirements of 35 U.S.C. § 112 ¶ 1 as to the subject matter of the '068 interference, and that Hiraga had not disclaimed that subject matter, the board properly accorded Hiraga the benefit of his Japanese application under 35 U.S.C. § 119. Therefore, the board correctly awarded priority to Hiraga.

**AFFIRMED.**