**WALDEMAR LINK, GmbH & CO., Plaintiff–Appellant,**

v.

**OSTEONICS CORPORATION, Defendant–Appellee.**

No. 94–1046.

United States Court of Appeals, Federal Circuit.

Aug. 19, 1994.

argued, for defendant-appellee. With him on the brief was Roy H. Wepner. Of counsel were Joseph S. Littenberg and Keith E. Gilman.

Before ARCHER, Chief Judge, LOURIE and RADER, Circuit Judges.

RADER, Circuit Judge.

Waldemar Link (Link) appeals the decision of the United States District Court for the District of New Jersey, estopping Link from obtaining a priority date for certain claims of Application Serial No. 472,853 (the '853 parent) which became U.S. Patent No. 4,698,063 (the '063 patent). Because Link's actions do not create an estoppel, this court reverses and remands.

## Background

On March 7, 1983, Link filed an application, the '853 parent, for a femoral hip joint prosthesis claiming priority from a German patent application filed May 3, 1982. The applications describe a prosthesis with a removable support collar to facilitate surgical manipulations.

In the initial office action on the '853 parent application, the Examiner objected to the specification under 35 U.S.C. § 112, first paragraph, for lack of an adequate written description of the invention. The Examiner perceived a lack of clarity in the drawings regarding the location of ribs and grooves in the prosthesis. The Examiner stated:

> Page 5, first paragraph, it is not clear from the drawings where, in fact, the ribs and grooves are located.
>
> The drawings are objected to because the figures do not clearly depict the features as set forth in the specification. (See page 5, first paragraph). Correction is required.

Nevertheless, claim 4—as originally filed—stated in part that the seating for the support neck includes "ribs and grooves which run at right angles to the axis of the stem or neck and act together." Similar language appeared in the specification.

In reply, Link cancelled original claims 1–4 and submitted new claims generally address-

William R. Murphy, Tyler, Cooper & Alcorn, New Haven, CT, argued, for plaintiff-appellant. With him on the brief was Guy D. Yale, Chilton, Alix & Van Kirk, Hartford, CT.

William L. Mentlik, Lerner, David, Littenberg, Krumholz & Mentlik, Westfield, NJ,

ing the same subject matter. The Examiner issued a final rejection citing both 35 U.S.C. §§ 102 and 103 as bases for the rejection. Significantly, the Examiner did not cite either 35 U.S.C. § 112 or § 132 as a basis for rejection.

Link responded to the final rejection with arguments and amendments. The Examiner refused to enter the amendments. The After Final Advisory Action set forth at least four grounds for not entering the amendments: (1) the applicant did not show under 37 C.F.R. § 1.116(b) (1993) good and sufficient reasons for the amendments, (2) the applicant "raise[d] the issue of new matter" requiring a new search, (3) the applicant's amendments did not place the application in better form for appeal, and (4) the applicant presented additional claims without cancelling a corresponding number of finally rejected claims. Link took no further action and thus abandoned the '853 parent application.

On November 6, 1985, Link filed Continuation–In–Part (CIP) Application, Serial No. 795,368. The application clearly set forth the rib and groove arrangement for the collar, as well as setting forth a simpler method of attachment to the bone. The CIP contained revised claims with additional embodiments and new drawings. The CIP eventually matured into the '063 patent.

Link sued Osteonics for infringement of the '063 patent. Osteonics moved for summary judgment, asserting Link's '063 patent was invalid under 35 U.S.C. § 112 for failure to disclose the best mode. According to Osteonics, at the time Link filed the CIP, it had developed a commercial embodiment of its invention that substantially differed from the embodiments disclosed in the CIP. Osteonics asserted that the commercial embodiment constituted the best mode which Link did not disclose in the CIP application.

Finding genuine issues of fact, the district court denied the motion for summary judgment. However, in addressing the motion for summary judgment, the district court held, as a matter of law, that the claims at issue were entitled only to the filing date of the CIP application, not the filing date of the earlier parent application. The district court reasoned that estoppel precluded Link from

asserting a date earlier than the CIP filing date. The district court made this holding the law of the case for the remainder of the trial.

Without the benefit of the earlier filing date, Link's German patent application would be prior art under 35 U.S.C. § 102 or § 103. Because such a holding could invalidate the claims at bar, Link moved for a revision of the district court's opinion. The district court denied Link's motion. The priority date was crucial to resolving the best mode issue; accordingly, the district court certified the priority date issue for interlocutory appeal under 28 U.S.C. § 1292(b) and (c) (1988). This court granted permission to appeal. 14 F.3d 612.

*Analysis*

■ In this case, this court reviews an estoppel based on what occurred during prosecution; in this way it is similar to prosecution history estoppel under the doctrine of equivalents. Thus, whether estoppel applies in the circumstances of this case is a conclusion of law reviewed for legal correctness. *See LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 867 F.2d 1572, 1576, 9 USPQ2d 1995, 1998 (Fed.Cir.1989).

■ A CIP application can be entitled to different priority dates for different claims. Claims containing any matter introduced in the CIP are accorded the filing date of the CIP application. However, matter disclosed in the parent application is entitled to the benefit of the filing date of the parent application. *See Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1438, 221 USPQ 97, 106 (Fed.Cir.1984).

■ Determination of whether a priority document contains sufficient disclosure under 35 U.S.C. § 112, first paragraph is a question of law. *Utter v. Hiraga*, 845 F.2d 993, 998, 6 USPQ2d 1709, 1714 (Fed.Cir. 1988). However, "compliance with the written description aspect of that requirement is a question of fact." *Id.* The fact finder must determine if one skilled in the art, reading the original specification, would immediately discern the limitation at issue in the parent. *In re Rasmussen*, 650 F.2d

1212, 1215, 211 USPQ 323, 327 (CCPA 1981). In other words, does the "disclosure of the application relied upon reasonably convey[ ] to the artisan that the inventor had possession at that time of the later claimed subject matter"? *Wang Labs., Inc. v. Toshiba Corp.,* 993 F.2d 858, 865, 26 USPQ2d 1767, 1774 (Fed.Cir.1993) (quoting *Vas–Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1563, 19 USPQ2d 1111, 1116 (Fed.Cir.1991). Furthermore, before making any factual determination about the disclosure of newly added material, the trial court examines the circumstances surrounding the prosecution of the patent application. *Litton,* 728 F.2d at 1438.

During the prosecution of the parent application, the patent Examiner acts as a fact-finder. If an Examiner determines that an amended claim recites elements without support in the parent disclosure, the proper basis of rejection is 35 U.S.C. § 112, first paragraph. *Rasmussen,* 650 F.2d at 1214.

If the Examiner finally rejects a claim as lacking support in the disclosure, applicants generally have a choice. They may appeal the Examiner's decision on the merits through the administrative appeals process of the Patent and Trademark Office (PTO). Alternatively, they may elect to file a continuing application and reargue the point. Or else applicants can file a CIP application adding support for the rejected claims, thus restricting claims containing any new matter to the later filing date of the CIP.

The CIP application thus does not explicitly memorialize the filing date accorded particular claims. Thus, when a priority date dispute arises, the trial court must examine closely the prosecution history to discover the proper date for each claim at issue. In *Litton,* this court held that when the PTO rejected a claim in a final action under 35 U.S.C. § 112, first paragraph, and the applicant later filed a continuation application which was then converted to a CIP after an interview with the Examiner, the applicant was estopped from obtaining a priority date earlier than the filing date of the CIP application. Litton, in effect, "implied that it did add new matter." *Litton,* 728 F.2d at 1438.

Estoppel does not occur, however, in the absence of an explicit final rejection under 35 U.S.C. § 112, first paragraph. In *Paperless Accounting, Inc. v. Bay Area Rapid Transit System,* 804 F.2d 659, 231 USPQ 649 (Fed.Cir.1986), *cert. denied,* 480 U.S. 933, 107 S.Ct. 1573, 94 L.Ed.2d 764 (1987), the first Office Action on the merits rejected all claims due to an incomplete and insufficient disclosure. In the final Office Action, the PTO made no 35 U.S.C. § 112 rejection. The applicant abandoned this original application. The applicant then filed a CIP application that matured into a patent. In subsequent litigation, this court refused to hold that the mere filing of a CIP amounts to a concession that the parent application contained an insufficient disclosure. The court reasoned that the final rejection contained no action showing an insufficiency of disclosure. This court noted with approval: "All rejections previously made and not continued in the final rejection are considered as withdrawn." *Paperless,* 804 F.2d at 663 (quoting *Ex parte Martin,* 104 USPQ 124,128 (Supr.Exmr.1952)). Because the final rejection did not cite 35 U.S.C. § 112, the PTO presumably withdrew those grounds of rejection. Moreover, "[s]ince the question of sufficiency of disclosure was not a basis for the final rejection, it could not have been appealed." *Paperless,* 804 F.2d at 663.

This case presents facts analogous to *Paperless.* The rejection before Link's abandonment was not based on 35 U.S.C. § 112. Link had no cause to appeal a rejection for insufficient disclosure. Rather, Link had good reason to believe filing a CIP would enable it to further respond to the section 102 and 103 rejections.

Osteonics attempts to distinguish *Paperless* by pointing out that Link tried to amend the claims after final rejection, but could not, at least in part, because the Examiner disallowed the proposed amendments. Link thereafter did not further petition the Commissioner.

This argument is not convincing. An applicant has discretion to submit amendments after a final rejection. The Examiner only permits such After Final Amendments

upon "a showing of good and sufficient reasons why they are necessary and were not earlier presented." 37 C.F.R. § 1.116(b). A refusal to permit such an amendment is not a rejection on the merits and leaves the application in the same status it was in after the final rejection.

In *Litton,* the Examiner made an unambiguous rejection under section 112 that gave the applicant an opportunity to appeal to the Board or concede the lack of entitlement to the original filing date for the new matter in question. The circumstances of that case involved an implied concession that there was new matter. The present case is different and features no such rejection under section 112. In fact, the Examiner's earlier objection did not appear in the final rejection. The applicant could have reasonably inferred that the Examiner withdrew the section 112 grounds.

 The patent system as a whole benefits from clear, unambiguous rules. Absent a clear rejection, estoppel does not apply. Estoppel only arises when a clear, unambiguous rejection gives rise to a choice of appealing or accepting the rejection, and the applicant accepts the rejection and expressly or impliedly concedes its correctness. In the absence of a clear and unambiguous rejection under 35 U.S.C. § 112, estoppel does not bar Link from obtaining an earlier filing date for the disputed claims. The court on remand must determine whether in fact the contested claims are supported by the '853 parent application.

## COSTS

Each party to bear its own costs.

*REVERSED AND REMANDED.*