**AMERICAN PERMAHEDGE, INC., Plaintiff,**

v.

**BARCANA, INC. and National Metal Industries, Inc., Defendants.**

**No. 92 Civ. 6369 (SWK).**

United States District Court, S.D. New York.

Oct. 25, 1995.

Rosenman & Colin by Albert L. Jacobs, Jr., Mark H. Sparrow, David A. Slossberg, New York City, for Plaintiff.

Richard B. Klar, New York City, for Defendants.

### MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this patent infringement action, defendants Barcana, Inc. and National Metal Industries, Inc. (collectively, "Barcana") renew their motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing plaintiff American Permahedge, Inc.'s ("American Permahedge") patent infringement claim against them. For the reasons set forth below, Barcana's motion is granted.

## I. The '647 Patent and the Evergreen Hedge

American Permahedge is in the business of marketing and selling artificial shrubbery designed to create the appearance of a hedge when threaded through the holes of a chain link fence. The hedge is composed of individual branches consisting of a pair of metal wires twisted together as a twig through which are threaded a multitude of plastic bristles resembling evergreen needles.

On September 29, 1987, Francis M. Paradise ("Paradise"), one of the inventors of the "American Permahedge," applied for a patent. In January 19, 1989, the United States Patent and Trademark Office (the "PTO") notified Paradise that his patent application was rejected as having been anticipated by U.S. Patent No. 3,343,357 (the "Goodridge Patent"). The Patent Examiner concluded that the hedge's structure was included in the Goodridge Patent and that its chain link fence design was "purely functional" and thus entitled to no patentable weight.

Subsequently, Paradise reapplied for a patent, distinguishing the Goodridge Patent as follows:

> In Goodridge the fibers [needles] are bunched together in discontiguous clumps, leaving defined spaces between each clump at the root, i.e., where the wires are twisted. Further, the fibers [needles] are bent permanently at an angle to the axis so that a planar array capable of forming shrubbery is not possible. As a result, Goodridge could not provide a densely packed contiguous planar array simulative of shrubbery. Goodridge provides a tree branch but not shrubbery.

*See American Permahedge v. Barcana, Inc.,* 857 F.Supp. at 311. On October 10, 1989, after reviewing the renewed application, the PTO issued U.S. Patent No. B1 4,872,647 to Paradise for a "Decorative Attachment For A Chain Link Fence" (the "'647 Patent"). Thereafter, Paradise assigned the '647 Pat-

ent to American Permahedge, which markets and sells the hedge today.

Although the '647 Patent contains five claims, only Claims One, Four and Five are at issue here. Claim One provides for a chain link fence and branches consisting of needles along a wire axial support. Specifically, Claim One includes:

> [C]amouflage assemblies comprising a central elongated axial support element and relatively stiff densely packed filament means fixedly carried by said support element and *extending laterally* of the axis thereof, said filament means forming a *bush-like planar array* that extends along the entire length of said support element.

*Id.* (emphasis added). Claims Four and Five differ from Claim One in that they describe combining the camouflage assemblies in specific types of chain link fences. Specifically, Claim Four recites in pertinent part:

> [D]ecorative attachment comprising a length of a cooperating pair of wires twisted lengthwise about each other with laterally extending plastic fibers engaged in the twists thereof, that said filaments present a generally planar hedge-like array, said plastic fibers thereafter move under the bias of the resiliency of the plastic construction material thereof into positions extending laterally of said twisted wire length, to substantially cover the corresponding openings in said fence by occluding the openings.

*Id.* at 312. Similarly, Claim Five delineates as follows:

> [D]ecorative attachments comprising a length of a cooperating pair of wires twisted lengthwise about each other with laterally extending plastic fibers engaged in the twists, said filaments present a generally planar hedge-like array, said plastic fibers thereafter move under the bias of the resiliency of the plastic construction material thereof into positions extending laterally of said twisted wire length, to substantially

**1.** The factual background of this litigation has been fully set forth by this Court in *American Permahedge v. Barcana, Inc.,* 857 F.Supp. 308, 311–15 (S.D.N.Y.1994) (the "1994 Opinion"), fa-

miliarity with which is presumed. For purposes of this Memorandum Opinion and Order, only a brief summary of the facts will be presented.

cover the corresponding openings in said fence.

*Id.*

In June 1991, Paradise learned of the existence of Barcana's "Evergreen Hedge" product. The Evergreen Hedge is another decorative attachment for a chain link fence composed of wires and bristles that creates the appearance of a natural hedge. Paradise immediately informed Barcana that the Evergreen Hedge was an infringement of the American Permahedge. Barcana responded that its product was noninfringing under the language of '647 Patent because its needles (1) bend at a forty-five degree angle to the axis of the twisted wire twig and thus are not "extending laterally" as described in Claim One; and (2) do not lie flat in a "planar array" as set forth in the '647 Patent.

## II. Procedural History

On August 20, 1992, American Permahedge commenced the present action, alleging that Barcana knowingly and willfully infringed Claims One, Four and Five of the '647 Patent. Shortly thereafter, American Permahedge filed a motion for a preliminary injunction on that ground that the continued manufacture, use or sale of the Evergreen Hedge would cause American Permahedge severe and irreparable injury. In response, Barcana moved for summary judgment dismissing the complaint on the basis of patent invalidity and noninfringement.

After a hearing held in March and April, 1993, the Court denied both motions. *See American Permahedge v. Barcana, Inc.,* 857 F.Supp. at 326. Addressing the issue of patent infringement, the Court noted that American Permahedge must prove either (1) that every element in the '647 Patent is also found in the Evergreen Hedge, *i.e.* literal infringement; or (2) that the Evergreen Hedge performs substantially the same function in substantially the same way to obtain the same result as the American Permahedge, *i.e.* equivalent infringement. *Id.* at 319. The Court determined that both methods of proof depended on the meaning of the phrases "extending laterally" and "planar array" contained in Claim One.

With respect to literal infringement, based on all of the evidence presented, including the prosecution history, expert testimony presented at the hearing and other relevant considerations, the Court agreed with Barcana (1) that the phrase "extending laterally" means that bristles extend perpendicularly from the wire twig; and (2) that the phrase "planar array" refers to "the branches themselves, rather than the overall hedge." *Id.* at 321–22. Despite these findings, the Court denied Barcana's motion for summary judgment on the basis of noninfringement, noting that "[w]hen the meaning of the term of a patent claim is disputed and extrinsic evidence is necessary to explain that term ... an underlying factual question arises and the claim construction must be left to the jury." *Id.* at 326 (citing *Palumbo v. Don–Joy Co.,* 762 F.2d 969, 974 (Fed.Cir.1985)). As for American Permahedge's claim based on the doctrine of equivalents, the Court agreed with Barcana that the difference in the angle and flatness of the needles precluded a finding that the Evergreen Hedge functions in substantially the same way as the American Permahedge product. *Id.* at 323.

## III. The *Markman* Decision

Subsequent to the issuance of the 1994 Opinion, the Federal Circuit Court of Appeals decided *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995) (en banc), which held that the interpretation and construction of patent claims is an issue of law reserved for the court. Specifically, the *Markman* Court determined:

> [I]n a case tried to a jury, the court has the power and obligation to construe as a matter of law the meaning of language used in the patent claim. As such, "[a] patent covers the invention or inventions which the court, in construing its provisions, decides that it describes and claims."

*Id.* (quoting 3 William C. Robinson, *The Law of Patents for Useful Inventions* § 1019, at 247 (1890)).

Based on this change in law, Barcana now renews its motion, pursuant to Federal Rule of Civil Procedure 56, for summary judgment dismissing American Permahedge's patent infringement claim. American Permahedge

opposes the motion on the grounds that (1) the determination of patent infringement remains a question of fact for the jury post-*Markman*; and (2) issues of fact preclude granting summary judgment in the present case.

## DISCUSSION

### I. Standard of Law

The 1994 Opinion set forth the applicable standard in deciding a motion for summary judgment and need not be repeated at length here. In brief, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial,'" and summary judgment must be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)).

### II. Literal Infringement

In a patent infringement case, a plaintiff has the burden of proving a defendant's infringement by a preponderance of the evidence. *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1573 (Fed.Cir.1994). The determination of whether a patent has been literally infringed requires a two-step analysis. *American Permahedge v. Barcana, Inc.*, 857 F.Supp. at 319. First, the court must determine as a matter of law the meaning and scope of the patent claims. *Markman v. Westview Instruments, Inc.*, 52 F.3d at 979; *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 791 (Fed.Cir.1995). Second, the product accused of infringement must be compared to the claims as construed by the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d at 976.

It is well-established that, in interpreting the claims, the court should look to three sources: the claims themselves, the patent specification and the patent's prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d at 979 (citations omitted); *Stryker Corp. v. Intermedics Orthopedics*, 891 F.Supp. 751, 766 (E.D.N.Y.1995). The court may also consider expert testimony, "'including evidence of how those skilled in the art would interpret the claims,'" in construing the claims at issue. *Markman v. Westview Instruments, Inc.*, 52 F.3d at 979 (quoting *Fonar Corp. v. Johnson & Johnson*, 821 F.2d 627, 631 (Fed.Cir.1987)). The prosecution history of the patent may be significant in that disclaimers made during prosecution limit the interpretation of the claims. *Southwall Technologies, Inc. v. Cardinal IG Company*, 54 F.3d 1570, 1576 (Fed.Cir.1995) (citing *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580 (Fed.Cir.1988); *Senmed, Inc. v. Richard–Allan Med. Indus., Inc.*, 888 F.2d 815, 818–20 (Fed.Cir.1989)); *Stryker Corp. v. Intermedics Orthopedics*, 891 F.Supp. at 767.

In the case at hand, the Court already has determined the scope of the '647 Patent on American Permahedge's motion for an injunction. Specifically, the Court found: (1) the phrase "extending laterally" means that bristles extend perpendicularly from the wire twig; and (2) the phrase "planar array" refers to "the branches themselves, rather than the overall hedge." *American Permahedge v. Barcana, Inc.*, 857 F.Supp. at 321–22. This decision was reached after evaluating the language of the claims, the patent specification and drawings, the patent's prosecution history and evidence presented at the hearing including expert testimony on the meaning of the relevant claim language. *See id.* at 320–22. The Court was also heavily persuaded by statements made by plaintiff during the prosecution of the '647 Patent. Specifically, the Court noted that, in distinguishing the '647 Patent from the Goodridge Patent:

> [T]he patentee stated that the needles of Goodridge "are bent permanently at an angle to the axis so that a planar array capable of forming shrubbery is not possible. As a result, Goodridge could not pro-

vide a densely packed contiguous planar array simulative of shrubbery."

*Id.* at 321–22 (quoting Amendment, dated Mar. 1, 1989, annexed to the Horwitz Aff. as exh. "H4"). The Court concluded that, based on the patentee's decision to restrict the scope of its claims to acquire the '647 Patent, American Permahedge "is estopped from now asserting that 'laterally extending' means anything other than perpendicular." *Id.* at 322.

■■■ Under *Markman,* this Court is now obligated to interpret the meaning of the claims as a matter of law. As this issue was thoroughly addressed in the 1994 Opinion, for the reasons set forth there and as briefly described above, the Court finds as a matter of law that (1) the phrase "extending laterally" means that bristles extend perpendicularly from the wire twig; and (2) the phrase "planar array" refers to the branches themselves, rather than to the overall hedge.

■■■ To determine whether American Permahedge can succeed on its literal infringement claim, however, the Evergreen Hedge must be compared to the claims as construed by the court. *See Markman v. Westview Instruments, Inc.,* 52 F.3d at 976. In particular, to establish literal infringement, the plaintiff must establish that every element in the '647 Patent is present in the Evergreen Hedge. *Southwall Technologies, Inc. v. Cardinal IG Co.,* 54 F.3d at 1575 (citing *Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 796 (Fed.Cir.1990)). Although American Permahedge correctly argues that such a comparison is essentially a factual determination, there is no genuine issue of fact that the test for literal infringement cannot be met here.[2] The parties do not dispute that the needles of the Evergreen Hedge extend at an angle from the wire twig rather than perpendicularly as set forth by the claims. Moreover, the Evergreen Hedge needles are twisted and therefore are incapable of creating the planar

array described by the '647 Patent. As it is thus undisputed that every element in the '647 Patent is not present in the Evergreen Hedge, Barcana's motion for summary judgment dismissing American Permahedge's claim is granted to the extent its claim is based on a theory of literal infringement.

## III. Doctrine of Equivalents

■■■ American Permahedge also pursues its infringement claim under the doctrine of equivalents, which provides that a product is infringing if "it performs substantially the same function in substantially the same way to obtain the same result." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950). In its renewed motion, Barcana argues that plaintiff's doctrine of equivalents claim fails as a matter of law based on governing Federal Circuit case law and the Court's interpretation of the claims at issue, including the application of prosecution history estoppel. The Court agrees.

■■■ The doctrine of equivalents was created "to prevent what is in essence a pirating of the patentee's invention" in situations where literal infringement does not exist. *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 870 (Fed.Cir.1985); *see also Stryker Corp. v. Intermedics Orthopedics,* 891 F.Supp. at 792 ("The purpose of the doctrine of equivalents is to ensure that the patentee is not deprived of the benefits of his or her patent by competitors 'who appropriate the essence of an invention while barely avoiding the literal language of the claim.'") (quoting *London v. Carson Pirie Scott & Co.,* 946 F.2d 1534, 1538 (Fed.Cir.1991)). Under this doctrine, the test of infringement is whether the differences between the claimed and accused products are sufficiently "insubstantial" to warrant a finding of infringement. *Hilton*

---

2. American Permahedge cites to *Hilton Davis Chem. Co. v. Warner–Jenkinson Co.,* 62 F.3d 1512 (Fed.Cir.1995), for the proposition that infringement is a question of fact. This is an accurate statement of the law in that, as set forth above, the second step of the analysis requires the factfinder to compare the accused product to the claims as construed by the court. This determination may in many instances require resolving factual issues. Contrary to Barcana's assertion, however, there is no indication that the *Hilton Davis* court was overruling the clear holding of *Markman* which requires courts to construe claims in the first instance.

*Davis Chem. Co. v. Warner–Jenkinson Co.,* 62 F.3d at 1517–18.

■ This doctrine, however, "is not a tool for expanding the protection of a patent after examination has been completed." *Southwall Technologies, Inc. v. Cardinal IG Co.,* 54 F.3d at 1579 (citing *Hormone Research Foundation, Inc. v. Genentech, Inc.,* 904 F.2d 1558, 1564 (Fed.Cir.1990)). Moreover, "prosecution history estoppel limits the range of equivalents available to a patentee by preventing recapture of subject matter surrendered during prosecution of the patent." *Id.* (citing *Townsend Eng'g Co. v. Hi-Tec Co.,* 829 F.2d 1086, 1090 (Fed.Cir.1987)); *see also Zenith Labs., Inc. v. Bristol–Myers Squibb Co.,* 19 F.3d 1418, 1424 (Fed.Cir.1994) ("The essence of prosecution history estoppel is that a patentee should not be able to obtain, through litigation, coverage of subject matter relinquished during prosecution.").

■ In the instant case, the Court already has construed the precise meaning of the claims under *Markman* and concluded that no genuine issue of fact prevents granting summary judgment in favor of Barcana on the issue of literal infringement. As plaintiff correctly points out, this determination does not foreclose the possibility that infringement may be established on the basis of the doctrine of equivalents. As the Federal Circuit Court of Appeals recently reaffirmed in *Hilton Davis Chem. Co. v. Warner–Jenkinson Co.,* 62 F.3d at 1522, infringement under the doctrine of equivalents is a factual issue for a jury in a jury trial and not subject to the trial judge's discretion.

■ Nonetheless, it is equally clear that the application of prosecution history estoppel is a question of law. *See Southwall Technologies, Inc. v. Cardinal IG Co.,* 54 F.3d at 1579; *Waldemar Link v. Osteonics Corp.,* 32 F.3d 556, 558 (Fed.Cir.1994). Here, American Permahedge surrendered the very subject matter that it now accuses Barcana of infringing, namely, the claim that the needles of the artificial shrubbery are attached at an angle rather than lying perpendicular to the central axis. Having relinquished this subject matter in acquiring the '647 Patent, the question whether the

difference between the American Permahedge and the Evergreen Hedge is "insubstantial" is moot. Accordingly, as plaintiff's claim based on the doctrine of equivalents fails as a matter of law, Barcana's motion for summary judgment as to noninfringement is granted. *See, e.g., Hoganas AB v. Dresser Indus., Inc.,* 9 F.3d 948, 951–54 (Fed.Cir. 1993) (affirming district court's decision of noninfringement under doctrine of equivalents on the ground that the patentee relinquished the accused subject matter during prosecution of the patent); *Haynes Int'l, Inc. v. Jessop Steel Co.,* 8 F.3d 1573, 1577–79 (Fed.Cir.1993) (same).

### CONCLUSION

For the reasons set forth above, Barcana's motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment as to noninfringement is granted.

SO ORDERED.